UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE JONES and LEONEL R. LEÓN, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br>v.<br><br>SAN DIEGO METROPOLITAN TRANSIT SYSTEM; SAN DIEGO TROLLEY, INC.; and DOES 1-50,<br><br>                              Defendants. | Case No.: 314cv01778-KSC<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION; (2) DIRECTING ISSUANCE OF NOTICE; AND (3) SETTING FINAL APPROVAL HEARING**<br><br>**[Doc. No. 53]** |

Presently before the Court is Plaintiffs' Motion for Preliminary Approval of Class Settlement (hereinafter "Motion") [Doc. No. 53], which seeks an order conditionally certifying a proposed settlement class, preliminarily approving class action settlement, and setting a hearing for final approval of the settlement. Defendants do not oppose plaintiffs' Motion. [Doc. No. 55.] For the reasons set forth below, plaintiffs' Motion is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Maurice Jones and Leonel R. León (collectively, "Plaintiffs") have been employed as Operators by defendants San Diego Metropolitan Transit System, San Diego

1  Trolley, Inc., and San Diego Transit Corporation (collectively, "Defendants"). This
2  lawsuit arises out of defendants' alleged engagement in an unlawful pattern and practice
3  of failing to pay its Operators for all compensable work performed by such employees,
4  including minimum wage and overtime pay.

5      On July 29, 2014, plaintiffs filed a class action complaint ("Action") in the United
6  States District Court for the Southern District of California asserting claims under the Fair
7  Labor Standards Act ("FLSA"), the California Labor Code, and the California Industrial
8  Welfare Commission Order No. 9-2001 ("Wage Order No. 9"). [Doc. No. 1.] On
9  December 12, 2014, defendants filed a motion to dismiss, pursuant to Rule 12(b)(6) of the
10 Federal Rules of Civil Procedure. [Doc. No. 4.] On May 13, 2015, this Court took the
11 matter under submission without oral argument, pursuant to Civil Local Rule 7.1(d). [Doc.
12 No. 10.] On August 13, 2015, the Court granted in part and denied in part defendants'
13 motion to dismiss, requiring that any amended complaint be filed in compliance with the
14 California Government Claims Act ("CGCA"). [Doc. No. 11.] Plaintiffs filed the first
15 amended complaint ("FAC") on August 26, 2015, alleging compliance with CGCA and
16 including claims under FLSA, the California Labor Code, and Wage Order No. 9. [Doc.
17 No. 12.] Thereafter, the parties engaged in written discovery and depositions over a period
18 of several months.

19     On March 2, 2016, defendants filed a motion for summary judgment, pursuant to
20 Rule 56 of the Federal Rules of Civil Procedure. [Doc. No. 20.] The Court granted this
21 motion in part and denied it in part on July 22, 2016. The Court dismissed San Diego
22 Trolley, Inc. ("SDTI") from the action, dismissed León from the suit under the doctrine of
23 *res judicata*, and dismissed Jones' claims for injunctive and declaratory relief. [Doc. No.
24 32.] Plaintiffs and defendants appealed the Court's order on August 20, 2016 and August
25 29, 2016, respectively. [Doc. Nos. 33, 37.] The appeals are currently pending.

26     After the parties filed their notices of appeal, they engaged in settlement negotiations
27 that extended over several months. On March 14, 2017, plaintiffs filed a Notice of
28 Settlement. [Doc. No. 51.] On March 17, 2017, this case was referred to the undersigned

14cv01778-KSC

Magistrate Judge to conduct all proceedings and order entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Doc. No. 52.] In the instant Motion, plaintiffs move to certify a class under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and to conditionally certify a collective action under FLSA for settlement purposes only. [Doc. No. 53.]

## II.    THE PROPOSED SETTLEMENT AGREEMENT

On March 14, 2017, the parties filed a Notice of Class Action Settlement and a proposed Class Action Settlement Agreement, outlining the terms of the settlement with exhibits related to class notice (hereinafter "Settlement Agreement"). [Doc. No. 51.] The proposed settlement class ("Class") is defined as:

> (1) all individuals who are or have been employed by SDTC as bus operators at any time during the Settlement Period; (2) claimants listed on the Agency Claim Form dated May 27, 2014 attached as Exhibit B to the FAC filed in the Action; (3) claimants listed on the Agency Claim Form sent by The Tidrick Law Firm to the Metropolitan Transit System dated July 23, 2014; and/or (4) individuals for whom Consents to Become Party Plaintiffs were filed with the court on September 18, 2015 and/or on December 14, 2016.

[Doc. No. 51, at p. 6 (internal citation omitted)]. There are an estimated 818 people in the Class. [Doc. No. 53-1, at p. 10.]

In exchange for the dismissal of the Action and releases from the plaintiffs, the Settlement Agreement requires defendants to pay no more than $125,000.00 (the "Gross Settlement Fund") to resolve the Action on a class-wide basis. The parties agreed:

> This fund will cover the settlement allocations to all Class Members, Plaintiffs' attorneys' fees and costs, all applicable employee and employer obligated payroll taxes, the total amount of service payments to Plaintiffs, and all settlement administration expenses. Under no circumstances shall Defendants' maximum total settlement liability under this Agreement exceed $125,000.

[Doc. No. 51, at p. 7.]

1  After the agreed upon costs of administering the settlement are deducted from the
2  Gross Settlement Fund,[1] the remainder ("Net Settlement Amount") will be distributed to
3  all Class Members who do not exclude themselves from the settlement. [Doc. No. 53-1, at
4  pp. 9-10.] The Net Settlement is estimated to be at least $57,500.00. *Id.* Each Class
5  Member will receive ten dollars ($10.00) plus a *pro rata* share of the remainder of the Net
6  Settlement Fund based on each Class Member's total hours worked during the Settlement
7  Period, as a percentage of the total hours worked by all Class Members during the
8  Settlement Period. *Id.* at 10. The allocation formula is set forth in the Settlement
9  Agreement.[2]

---

[1] The proposed allocation of the Gross Settlement Fund is: "[N]etting out costs of administering the settlement, which have been estimated at $12,000, Plaintiffs' attorneys' fees of up to thirty percent (30%) of the Gross Settlement Fund ($37,500) and reimbursement of reasonable litigation expenses not to exceed $10,000, a Service Payment to each of the two Plaintiffs not to exceed $4,000, the Net Settlement Amount (of at least $57,500) will be distributed to all Class Members who do not exclude themselves from the settlement." [Doc. No. 53-1, at pp. 9-10.]

[2] The proposed allocation formula is:

> (1) **Calculate Each Class Member's Share.** Upon Approval by the Court, MTS shall provide the Settlement Administrator with a spreadsheet containing the number of hours worked by each Class Member during the Settlement Period. Each Class Member's share is ten U.S. dollars ($10.00) plus a *pro rata* share of the remainder of the Net Settlement Fund based on each Class Member's total hours worked during the Settlement Period, as a percentage of the total hours worked by all Class Members during the Settlement Period.

> (2) **Calculate Each Class Member's Payroll Taxes.** The Settlement Administrator will then make appropriate adjustments to the portion of each Individual Gross Class Member Share for the payment of all applicable payroll taxes and deductions required or permitted by applicable law in connection with the payment of wages to the Class Member. The Settlement Administrator will coordinate the calculations of such taxes and deductions with MTS to ensure compliance with the requirements of all government taxing authorities, and timely remit those sums to the appropriate government taxing authorities. The remaining balance of the Class Member's Gross Share, after such adjustments and deductions are made, is the 'Class Member's Net Share.'

[Doc. No. 51, at p. 9.]

# III. LEGAL STANDARD FOR APPROVAL OF A HYBRID RULE 23 CLASS ACTION AND FLSA COLLECTIVE ACTION SETTLEMENT

In the instant Motion, plaintiffs move to certify the class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and conditionally certify the collective action under the FLSA.[3]

# IV. RULE 23 CLASS ACTION SETTLEMENT

## A. Legal Standard for Approval of Class Actions under Rule 23

A Rule 23 class action may not be settled without approval of the court. Fed. R. Civ. P. 23(e). The primary concern "is the protection of those class members . . . whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City*, 688 F.2d 615, 624 (9th Cir. 1982).

Approval consists of two stages – a preliminary approval followed by a later final approval. *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). *See also Manual for Complex Litigation* § 21.632 (4th ed. 2004). The instant Motion involves the first stage of approval. At this stage, the Court does not make a final determination; rather, the Court inquires whether the proposed settlement falls within the "range of possible approval." *See 2 McLaughlin on Class Actions* § 6:7 (13th ed. 2016).

---

[3] While a Rule 23 class action and FLSA collective action can be joint as a hybrid case, there is the potential for confusion because of the differences in the "opt-in" and "opt-out" requirements. *Khanna v. Intercon Sec. Sys., Inc.*, 2014 WL 1379861, at *5 (E.D. Cal. Apr. 8, 2014) (to become a Class Member in a FLSA action, employees must "opt-in," while all employees who fit within the defined class are treated as Class Members in cases pursued under Rule 23 unless they "opt-out"). However, it is not uncommon for courts to allow actions to proceed as hybrid actions. *See e.g. Thompson v. Costco Wholesale Corp.*, 2017 WL 1957552, at *4 (S.D. Cal. May 11, 2017); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015). Class Counsel shall address any arguments supporting the decision for a joint action and their decision to create one joint settlement fund in their Motion for final approval.

5

The Ninth Circuit maintains a "strong judicial policy" favoring settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, to protect the interests of absent members of the class, courts are required to pay close attention to class certification requirements and consider whether the proposed settlement "taken as a whole" is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (internal citation omitted).

First, the Court must determine whether the class satisfies the four criteria of Rule 23(a) and one prong of Rule 23(b). *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 659 (E.D. Cal. 2008). Then, the Court must determine whether the proposed settlement terms appear to be sufficiently fair, reasonable, and adequate. *See id.*

### B. Rule 23 Preliminary Fairness Determination

Here, the parties seek to certify a class for settlement purposes only. [Doc. No. 53-1, at p. 16, n.1.] Rule 23(a) establishes four criteria for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). If subsection (a) is satisfied, the putative class must then fulfill the requirements of Rule 23(b)(3). Fed. R. Civ. P. 23(b). If subsections (a) and (b) are satisfied, the Court will then evaluate whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).

### 1. The Class Satisfies the Four Criteria of Rule 23(a)

#### i. Numerosity

Generally, the numerosity requirement is satisfied when a class contains forty or more individuals. *Cleano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007); *Quintero* v. *Mulberry Thai Silks, Inc.*, 2008 WL 4666395, at *3 (N.D. Cal. Oct. 22, 2008) (internal citation omitted). Here, the estimated Class is 818 people. Accordingly, the numerosity requirement is met.

#### ii. Commonality

Commonality requires that there are some "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit does not require that *all* questions of

law or fact be common, rather it is construed liberally. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Id.*

Here, the Class Members have all worked as transit Operators for defendants; thus the class claims raise similar questions under federal and state law, including: (1) whether the Class Members are paid through a common compensation program or payroll system; (2) whether defendants determined the hours that its employees actually spent doing compensable work; and (3) whether the workers were properly paid overtime. Because Class Members have the same or similar allegations, there are common questions of law and fact. Accordingly, the commonality requirement of Rule 23(a)(2) is met.

### iii. *Typicality*

In order to qualify as typical, claims of the representative parties "need not be substantially identical" to those of all absent class members; rather, they need only be "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020. Here, the claims may vary based on specific allegations of defendants' failure to pay for compensable time,[4] but the proposed Class Members allege they suffered the same or similar injuries and damages. [Doc. No. 12, at p. 4.] Furthermore, all allegations are based on a common nucleus of facts and a common core of wage and hours claims. Accordingly, the requirements for Rule 23(a)(3) for typicality are met.

### iv. *Adequacy of Representation*

Rule 23(a)(4) requires the class representatives to adequately and fairly protect the interests of the class. Two criteria must be satisfied: "First, the named representatives must appear to be able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed

---

[4] This may include time spent at mandatory meetings, examination time, document review time, or the differential time between scheduled run times and actual run times. [Doc. No. 12, at p. 4.]

members of the class." *Lerwill v. Inflight Motion Picture, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, plaintiffs have pursued this action since 2014 and it appears to the Court that they are capable of continuing to do so.

The Gross Allocation Formula provides that the two named plaintiffs will receive a Service Payment, also referred to as an incentive award, not to exceed $4,000.00. [Doc. No. 53-1, at p. 10.] The fact that plaintiffs seek an incentive award does not necessarily create an impermissible conflict. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class. . . do not, by themselves, create an impermissible conflict. . ."). This practice is common in class actions and is especially appropriate in wage-and-hour actions "where a plaintiff undertakes a significant 'reputational risk' by bringing suit against their former employers." *Aguilar v. Wawona Frozen Foods*, 2017 WL 117789, at *6 (E.D. Cal. Jan. 11, 2017) (internal citation omitted). Furthermore, the proposed incentive award (no more than $4,000.00 each) is a reasonable effort to compensate plaintiffs for their work on behalf of the Class. *See id.* (an incentive award of $5,000.00 in a settlement where unnamed class members receive twelve dollars ($12.00) was "well within the usual norms of 'modest compensation' paid to class representatives for services performed in the class action.").

Additionally, with respect to the criteria for qualified counsel, plaintiffs' counsel asserts that their firm "regularly engages in major complex litigation, and has extensive experience in wage and hour class action lawsuits." [Doc. No. 53-2, at p. 7.] In addition to having experienced counsel, the settlement was reached under the supervision of an impartial mediator, Peter Sherwood, appointed by the U.S. Court of Appeals for the Ninth Circuit. [Doc. No. 53-2, at p. 6.] Accordingly, the requirements of Rule 23(a)(4) are satisfied.

## 2. The Class Satisfies the Criteria of Rule 23(b)

In order to certify a class action, plaintiffs must not only establish the four prerequisites of Rule 23(a) set forth above, but they must also fulfill the requirements of

14cv01778-KSC

Rule 23(b). *See* Fed. R. Civ. P. 23(b). An action may be maintained as a class action if the court finds that: (1) common questions of law and fact predominate over questions affecting individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Plaintiffs contend that "[b]oth criteria are met here." [Doc. No. 53-1, at p. 19.] The Court agrees that both the predominance and superiority requirements are met for the reasons set forth below.

### i. *Predominance*

The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant class action adjudication. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Analysis is focused on the relationship between the common and individual issues. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal citation omitted).

Here, as in numerous other wage and hour class actions, the litigation arises out of a uniform policy of compensation. Defendants treat the Class as a homogenous group for the purposes of compensation. The Ninth Circuit has held that "it is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 956 (9th Cir. 2009) (internal citation omitted). This ruling and defendants' non-opposition to plaintiffs' motion for conditional class certification, strongly support a finding of predominance. [Doc. No. 54.]

### ii. *Superiority*

Furthermore, a class action is the superior method for adjudication in this case. Here, the alternative to a class action is for the individual Class Members to file separate claims. Because many claims would involve small individual sums, many Class Members would be discouraged from pursuing their claims due to the disparity between the cost of litigation

and their potential remedy. Recognizing the importance of judicial efficiency, the Ninth Circuit has found that in similar situations, "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). *See also Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2000) (where the court found the superiority requirement was "easily met" in a case similarly involving "multiple claims for relatively small individual sums"). Thus, the Court finds that both requirements of Rule 23(b) are satisfied.

### 3.    Conclusion

Because plaintiffs have satisfied all of the Rule 23(a) criteria and the Rule 23(b)(3) predominance and superiority requirements, this Class is preliminarily certified for settlement purposes only.

## V.    FLSA COLLECTIVE ACTION SETTLEMENT

### A. Legal Standard for Approval of a FLSA Collective Action Settlement

FLSA claims brought on behalf of "similarly situated" individuals are frequently referred to as collective actions. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *see also Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000). The Ninth Circuit uses a two-step process to determine whether members are "similarly situated." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015). First, the court considers the "limited amount of evidence before it" to determine whether the proposed class should be given notice. *Id.* In doing so, the Ninth Circuit adopts a "fairly lenient" standard. *Id. See also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (the standard for FLSA certification is "no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure"). Second, the party opposing the certification may move to decertify the class once discovery is complete. *Id.*

Because the standard for approving FLSA collective actions is only nominally different than the standard for approving Rule 23 class actions, "many courts begin with the well-established criteria for assessing whether a class action settlement is 'fair, reasonable, adequate' under Fed. R. Civ. P. 23(e), and reason by analogy to the FLSA context." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (court adopted a totality of the circumstances approach that included an analysis of the factors relevant to Rule 23 class actions to find that a FLSA settlement agreement in the amount of $50,000.00 was fair and reasonable). Accordingly, if the Settlement Agreement warrants approval under Rule 23, it will likely warrant approval under the FLSA as well.

### B. FLSA Collective Action Analysis

First, based on the evidence before this Court, the Class appears to be similarly situated. All members of the Class are current or former employees of defendants [Doc. No. 51, at p. 6] and all claims arise from the contention that defendants failed to pay its employees for all compensable work, including minimum wage and overtime pay. The Class, as discussed *supra*, preliminarily satisfies the Rule 23(a) and (b) criteria. Furthermore, as discussed in more depth, *infra*, the Settlement Agreement fits within the range of possible approval based on fairness, reasonableness, and adequacy at this preliminary stage. Thus, given FLSA's more lenient standards, the first step is met.

Second, defendants do not oppose certification of the Class for settlement purposes, as indicated in their Statement of Non-Opposition [Doc. No. 55] and by their participation in the Settlement Agreement [Doc. No. 51]. Therefore, there is no indication that defendants will seek to decertify the Class, so the Court need not analyze this step further. *See Millan*, 310 F.R.D. at 607 ("Absent an argument that the parties are not similarly situated, this Court need not look to the second step at all.")

### C. Conclusion

Because the Class warrants approval under Rule 23, and in light of the less stringent standard for meeting the "similarly situated" requirement under FLSA, plaintiffs' FLSA class is conditionally certified for settlement purposes only.

## VI. FAIRNESS, REASONABLENESS, AND ADEQUACY OF PROPOSED SETTLEMENT

Next, the Court must preliminarily determine whether the proposed settlement terms appear to be sufficiently fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e). District Courts consider a number of factors, including:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959. Because some of these factors, such as the reaction of the Class Members to the proposed settlement, cannot be fully assessed until notice has been disseminated, "a full fairness analysis is unnecessary at this stage." *Alberto*, 252 F.R.D. at 665. Additionally, there is no governmental participant. The Court considers the remaining factors below.

### A. Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

While plaintiffs believe the case has merit, plaintiffs and their counsel acknowledge that defendants have grounds available for defending this action. [Doc. No. 53-2, Decl. of Steven G. Tidrick, Esq. ("Tidrick Decl."), at p. 5, ¶¶ 20-21.] The strength of plaintiffs' case appears to be weakened by the District Court's partial grant of summary judgment in favor of defendants. [Doc. No. 32.] In the partial summary judgment Order, this Court barred plaintiff León from bringing this action under the doctrine of *res judicata* and dismissed plaintiff Jones' claims for injunctive and declaratory relief. *Id.*

Both parties have appealed this partial summary judgment Order, which indicates that there will be continued litigation if the Class is not conditionally certified for settlement purposes. [Doc. Nos. 33, 37.] Because class actions involve complex litigation, continuance of this suit will be expensive and time-consuming for both parties and this Court. The strength of plaintiffs' case and the risk of future motions and continued litigation, and possible appeals, weigh in favor of settlement at this stage of the proceedings.

### B. Amount Offered in Settlement and Experience and Views of Counsel

In this case, defendants agree to provide a Gross Settlement Fund of $125,000.00. [Doc. No. 53-1, at p. 9.] After the agreed upon deductions,[5] $57,500.00 will be distributed among the Class Members, which is forty-six percent (46%) of the Gross Settlement Fund. *Id.* at pp. 9-10. District Courts in California have found similar percentages to be reasonable for settlement purposes. *See, e.g., Rivera v. Agreserves, Inc.*, 2016 WL 5395900, at *7 (E.D. Cal. Sept. 26, 2016) (finding a settlement of approximately forty-six percent (46%) of the total settlement fund to be reasonable); *Aguilar v. Wawona Frozen Foods*, 2017 WL 117789, at *5 (E.D. Cal. Jan. 11, 2017) (defining a settlement agreement allocating forty-seven percent (47%) of the total maximum possible recovery to Class Members as "not *per se* unreasonable").

Plaintiffs' counsel regularly engages in major complex litigation and has extensive experience in "wage and hour class action lawsuits that are similar in size, scope, and complexity to the present case." [Tidrick Decl., at p. 7, ¶¶ 21-23.] Given their intimate familiarity with the lawsuit, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). *See also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

---

[5] Deductions include attorneys' fees, costs, administrative fees, and incentive awards for the named plaintiffs. [Doc. No. 53-1, at pp. 9-10.]

1  528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who
2  are most closely acquainted with the facts of the underlying litigation.").

3      Plaintiffs' counsel finds the Settlement Agreement is "fair, adequate, and reasonable,
4  in the best interest of the Class." [Tidrick Decl., at p. 8, ¶¶ 13-14.]

5      Here, in light of plaintiffs' counsel's extensive experience, and their intimacy with
6  the facts and legal arguments of this case, their recommendations are presumed to be
7  reasonable, favoring approval. Accordingly, the Court finds that the settlement amount, at
8  this preliminarily stage, appears to be fair, reasonable, and adequate.

9  ### C. Extent of Discovery Completed and the Stage of Proceedings

10     Prior to the agreed-upon settlement, the parties engaged in almost three years of pre-
11  trial litigation. This included an Early Neutral Evaluation and a telephonic Status
12  Conference before this Court [Doc. Nos. 16, 36], numerous motions for and in opposition
13  of summary judgment [Doc. Nos. 4, 20, 24, 25], and notices of appeal by both parties [Doc.
14  Nos. 33, 37]. Both plaintiffs' and defendants' counsel gained significant knowledge of the
15  relevant facts and law throughout this process and through independent investigation and
16  evaluation. It appears the parties engaged in significant discovery and litigation about key
17  legal and factual issues, including the strengths and weaknesses of their claims and
18  defenses. Accordingly, this factor weighs in favor of approval.

19  ### D. Attorney Fees and Presence of Subtle Signs of Collusion

20     It is the district court's obligation to ensure that the Settlement Agreement is fair for
21  the absent class members. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th
22  Cir.1985). "Prior to formal class certification, there is an even greater potential for a breach
23  of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prod. Liab.*
24  *Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Accordingly, this Court must be diligent
25  regarding any indication of collusion before approving the settlement as fair. *See id.*

26     Collusion can come in many subtle forms. Courts in this Circuit consider factors
27  such as: (1) disproportionate distribution of settlement among counsel and class members;

28

14

(2) "clear sailing" arrangements[6] between parties; and (3) whether the parties arrange for fees not awarded to revert back to defendants, as opposed to the settlement fund. *Id.* at 946–47 (internal citations omitted). Here, there is no "clear sailing" arrangement[7] and fees not awarded are reverted back to the Class fund, not the defendants.[8]

However, the Court notes the potential for disproportionate distribution of settlement funds. Plaintiffs' counsel requests an award of thirty percent (30%) of the Gross Settlement Fund (or $37,500.00) as attorneys' fees, plus up to $10,000.000 for costs and expenses. [Doc. No. 51, at p. 10.] The typical range of acceptable attorneys' fees in the Ninth Circuit is twenty percent (20%) to one-third (33.33%) percent of the total settlement value. *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000). Twenty-five percent (25%) is the benchmark, and any departure from that percentage requires adequate explanation in the record of the "special circumstances" involved. *In re Bluetooth,* 654 F.3d at 942.

Here, the parties agree that approval or denial of the proposed attorneys' fees provision is "not a material condition to this Agreement and is to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the settlement." [Doc. No. 51, at p. 10.] Thus, at this procedural posture, the Court finds that the attorneys' fees provision is sufficient for preliminary approval of the settlement, but

---

[6] A "clear sailing" arrangement has been defined by the Ninth Circuit as "an arrangement where defendant will not object to a certain fee request by class." *Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015) (where defendant "agreed not to dispute the award of fees to Class Counsel, as long as that award did not exceed 25% of the common fund").

[7] While defendants filed a Statement of Non-Opposition to the Settlement Agreement [Doc. No. 55], there is no express arrangement whereby defendants agree not to dispute the separate application for attorneys' fees. This is in contrast to the terms of the settlement in *Tapia v. Zale Deleware, Inc.,* which specified that, "Zale will not oppose Class Counsel's application for attorneys' fees of up to 28% ($504,000) of the Total Settlement Amount." 2017 WL 1399987, at *3–4 (S.D. Cal. Apr. 18, 2017) (citing Doc. No. 117-2, at p. 16).

[8] "Any amounts requested as attorneys' fees and costs under this Agreement, but not approved by the Court, shall be added to the Net Settlement Fund, to be proportionally distributed to the Class as set forth herein." [Doc. No. 53, at p. 10].

Class Counsel shall address any arguments supporting the heightened reward of thirty percent (30%) in their separate application for attorneys' fees. Additionally, the Court will carefully scrutinize Class Member objections, if any, to the proposed thirty percent (30%) award.

### E. Conclusion

For the purposes of preliminary approval, the Court is satisfied that the Settlement Agreement fits within the range of possible approval based on fairness, reasonableness, and adequacy.

## VII. REQUIRED NOTICE TO PARTIES AND FAIRNESS HEARING

### A. Notice Requirements

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule directs:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

The proposed Settlement Agreement anticipates that the parties will utilize a third-party Settlement Administrator, Simpluris, Inc.[9] ("Simpluris"). [Doc. No. 53-1, at p. 11.] The parties propose that within fifteen (15) days of Preliminary Approval, defendants will

---

[9] The parties assert that Simpluris provided the lowest bid of the four administrators from whom bids were requested. [Doc. No. 53-1, at p. 11.]

provide the Class List, including an updated address of each Class Member, to Simpluris. *Id.* Simpluris will then mail the proposed notice ("Notice"), change of address form, and preprinted return envelope to each Class Member within forty-five (45) days of Preliminary Approval. *Id.* Notice will include the estimated Settlement Share for each Class Member assuming he/she does not opt out. *Id.* at p. 12. Simpluris will resolve any dispute by Class Members who wish to challenge this calculation. *Id.* at p. 13.

The Court has reviewed the Notice and its procedures and finds that it satisfies the requirements of Rule 23(c)(2)(b).

### B. Fairness Hearing

Rule 23(e)(2) requires that "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[10] A fairness hearing need not have all the procedures and protections of a full trial; it is a forum for intervenors to voice their objections and for the fairness of the settlement to be determined. *UAW v. General Motors Corp.*, 235 F.R.D. 383, 386 (E.D. Mich. 2006); *Tenn. Ass'n of Health Maint. Org., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001).

Here, the parties agree to a framework allowing Class Members to object to the proposed Settlement Agreement. [Doc. No. 53-1, at p. 12.] Therefore, the Court can consider all objections made at the fairness hearing before making a final determination of fairness.

### VIII. CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** plaintiffs' Motion for Preliminary Approval of Class Settlement. [Doc. No. 53.] At the final approval hearing, the Court will

---

[10] "The purpose of a fairness hearing is to provide the court with sufficient evidence for it to make an informed decision relating to the fairness of the proposed settlement." *UAW v. General Motors Corp.*, 235 F.R.D. 383, 386 (E.D. Mich. 2006).

give careful consideration to any objections from Class Members (or the lack thereof) when determining whether final approval is warranted.  The Court further **ORDERS** as follows:

1. The Court hereby preliminarily approves the Settlement Agreement [Doc. No. 51], finding it fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing.

2. For purposes of this Order, the Court adopts all defined terms as set forth in the Settlement Agreement.

3. The Court preliminarily finds the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and conditionally certifies the Class for settlement purposes only.

4. The Court preliminarily finds the requirements of 29 U.S.C. § 216(b) for an FLSA Collective Action are satisfied and conditionally certifies the Collective Action for settlement purposes only.

5. The Class shall consist of:

   > (1) all individuals who are or have been employed by SDTC as bus operators at any time during the Settlement Period; (2) claimants listed on the Agency Claim Form dated May 27, 2014 attached as Exhibit B to the FAC filed in the Action; (3) claimants listed on the Agency Claim Form sent by The Tidrick Law Firm to the Metropolitan Transit System dated July 23, 2014; and/or (4) individuals for whom Consents to Become Party Plaintiffs were filed with the court on September 18, 2015 and/or on December 14, 2016. [Doc. No. 51, at p. 6 (internal citation omitted)].

6. The Court appoints, for settlement purposes only, Steven G. Tidrick, Esq. and Joel Young, Esq. of The Tidrick Law Firm as Class Counsel.

7. The Court appoints, for settlement purposes only, Plaintiffs Maurice Jones and Leonel R. León as the Class Representatives.

8. The Court appoints, for settlement purposes only, Simpluris, Inc. as the Settlement Administrator.

14cv01778-KSC

9. The Notice in the form attached to the Settlement Agreement [Doc. No. 51, at pp. 25-35] is approved. The Court finds the distribution of the Notice in the manner and form set forth in the Settlement Agreement is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Class Members. Furthermore, it satisfies due process requirements and the requirements of Rule 23(c)(2). The Settlement Administrator is hereby **ORDERED** to mail the Notice to the Class pursuant to the procedures set forth in the terms of the Settlement Agreement. [Doc. No. 53-1, at pp. 11-13.]

10. In compliance with Federal Rule of Civil Procedure 23(b)(3), Class Members will be permitted to exclude themselves from the Class. Any request to be excluded must be made in accordance with the Settlement Agreement and instructions on the Notice Packet [Doc. No. 51, at p. 31], and must be postmarked no later than forty-five (45) calendar days after the initial date of the mailing of the Notice. *Id.*

11. In compliance with Federal Rule of Civil Procedure 23(e)(5), Class Members may object to the Settlement Agreement by following the instructions set forth in the Notice Packet. [Doc. No. 51, at p. 32.] Any objection must be filed with the Clerk of this Court and served on the Settlement Administrator no later than forty-five (45) calendar days after the initial date of the mailing of the Notice. *Id.*

12. The Court will hold a Final Approval Hearing on **November 1, 2017** at **2:00 p.m.** in the Courtroom of the Honorable Karen S. Crawford, United States District Court for the Southern District of California, Courtroom 1E (1st Floor—Schwartz), 221 West Broadway, San Diego, CA 92101, for the following purposes:

   a. Finally determining whether the Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure and whether the Class should be certified for the purposes of effectuating the Settlement Agreement;

   b. Finally determining whether the Collective satisfies the requirements of FLSA (29 U.S.C. § 216(b));

   c. Finally determining whether the proposed settlement of the case on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved and ordered by the Court;

   d. Considering the application of Class Counsel for an award of attorneys' fees and costs, as provided for in the Settlement Agreement, including any arguments supporting the heightened reward of thirty percent (30%) and objections thereto;

14cv01778-KSC

e.  Considering the application of the named Plaintiffs for a Class Representative incentive award, as provided for in the Settlement Agreement;

f.  Considering whether the release by the Class and Collective Members of the Released Claims as set forth in the Settlement Agreement should be provided; and

g.  Ruling upon such other matters as the Court may deem just and appropriate.

13. The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the Class Members.

14. Class Counsel shall file and serve their motion for final approval of the Settlement Agreement, along with all supporting evidence, no later than fourteen (14) calendar days after the deadline for objections.

15. Class Counsel shall file and serve their motions for an award of attorneys' fees, reimbursement of expenses, and Class Representative Service Payments at least fourteen (14) days before the deadline for objections.

16. The Settlement Agreement [Doc. No. 51] is deemed filed as of the date of preliminary approval for purposes of providing notice to the appropriate officials pursuant to 28 U.S.C. § 1715.

17. No later than fourteen (14) calendar days prior to the Final Approval Hearing, the Settlement Administrator shall file an affidavit and serve a copy on Class Counsel and defense counsel, attesting that notice was disseminated as required by the terms of the Settlement Agreement. [Doc. No. 51, at pp. 25-35]. This affidavit shall also inform the Court of any requests for exclusion from the Class, the names of employees who opted in to the FLSA collective, and objections or other reactions from Class/Collective Members received by the Settlement Administrator.

18. The parties may further modify the Settlement Agreement prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the Settlement provided thereunder. The Court may approve the Settlement Agreement with such modifications as may be agreed to by the parties, if appropriate, without further notice to the Settlement Class.

19. During the Court's consideration of the settlement and pending further order of the Court, all proceedings in this case, other than proceedings necessary to carry out the terms and provisions of the Agreement and this Order, or as otherwise directed by the Court, are hereby stayed and suspended.

20. To facilitate administration of the Settlement Agreement pending final approval, the Court hereby enjoins Class Members from prosecuting any claims or administrative proceedings regarding the claims released by the Settlement Agreement unless and until the Class Members file a valid request for exclusion.

**IT IS SO ORDERED.**

Dated: June 26 2017

Hon. Karen S. Crawford
United States Magistrate Judge

14cv01778-KSC